1                        UNREDACTED

2              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
3                       EASTERN DIVISION

4        -------------------------------------------------

5
UNITED STATES OF AMERICA               )
6                                        )
VS                                     )NO.1:20-cr-10063-STA
7                                        )JACKSON, TENNESSEE
                                        )
8    JASON WAYNE AUTRY                   )

9        -------------------------------------------------

10

11                   CHANGE OF PLEA HEARING

12

13                      NOVEMBER 22, 2022

14

15

16         BEFORE THE HONORABLE S. THOMAS ANDERSON,

17              UNITED STATES DISTRICT JUDGE

18

19

20

21                     KRISTI HEASLEY, RPR
                     OFFICIAL COURT REPORTER
22              U.S. COURTHOUSE, SUITE 450
                  111 SOUTH HIGHLAND AVENUE
23                JACKSON, TENNESSEE 38301

24

25


                    UNREDACTED TRANSCRIPT

1                          APPEARANCES

2

3

4   FOR THE UNITED STATES:

5   UNITED STATES ATTORNEY'S OFFICE
    BETH BOSWELL, ESQ.
6   WILLIAM JOSH MORROW, ESQ.
    109 S. Highland Avenue
7   Third Floor
    Jackson, TN 38301

8

9

10

11  FOR THE DEFENDANT:

12  MEGGAN BESS SULLIVAN, ESQ.
    424 Church Street, Suite 2000
13  Nashville, TN 37209

14

15

16

17

18

19

20

21

22

23

24

25

                    UNREDACTED TRANSCRIPT

1                          EXAMINATION INDEX

2                        NO TESTIMONY OFFERED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              EXHIBITS

2                          NO EXHIBITS MARKED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (Defendant Present.)
 2                    THE COURT:  This is United States versus
 3   Jason Wayne Autry, No. 20-10063.
 4                    Is the government ready to proceed?
 5                    MS. BOSWELL:  We are, Your Honor.
 6                    THE COURT:  Ms. Sullivan, are you ready to
 7   proceed?
 8                    MS. SULLIVAN:  Yes, Your Honor.
 9                    THE COURT:  Is there a plea agreement?
10                    MS. SULLIVAN:  Yes.
11                    THE COURT:  Do you have it, Maurice?
12                    THE CLERK:  Yes, sir.
13                    THE COURT:  Okay.  Are you Jason Wayne
14   Autry?
15                    THE DEFENDANT:  Yes, sir.
16                    THE COURT:  All right.  Scoot up to that
17   microphone, Mr. Autry, and speak up so that we can hear
18   you clearly.
19                    It's my understanding that you have
20   decided to enter a plea of guilty to Count 1, Count 2 and
21   Count 3 of the third superseding indictment.
22                    Is that correct?
23                    THE DEFENDANT:  Yes, sir.
24                    THE COURT:  I'm going to be asking you
25   several questions.  I want to be sure that you understand
```

1    the questions before you give me an answer.  If I ask

2    anything that's not clear or you would like for me to

3    repeat, you let me know.

4                    Will you do that?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  Also if I ask you a question

7    and you like to discuss your answer with your attorney

8    Ms. Sullivan before you give it to the Court, you can do

9    that.  But again, you will nee to let me know.

10                   Do you understand?

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  All right.  Stand and raise

13   your right hand.

14                   (Defendant was sworn.)

15                   THE DEFENDANT:  I do.

16                   THE CLERK:  Thank you.

17                   THE COURT:  All right.  Mr. Autry, you are

18   now under oath.  All of your answers to my questions must

19   be honest and truthful.  If you give any answers while

20   you are under oath that are not honest and truthful, then

21   you could be prosecuted for perjury, for giving a false

22   statement under oath, or obstruction of justice.

23                   Do you understand?  Answer out loud.

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  How old are you?

1          THE DEFENDANT:  Forty-eight.

2          THE COURT:  How far did you go in school?

3          THE DEFENDANT:  Twelfth grade.

4          THE COURT:  Did you complete the 12th

5    grade?

6          THE DEFENDANT:  Yeah.

7          THE COURT:  Did you get a degree or a

8    certificate from high school?

9          THE DEFENDANT:  Yeah.

10          THE COURT:  Roughly what year did you

11    receive that?

12          THE DEFENDANT:  '96.

13          THE COURT:  1996?

14          THE DEFENDANT:  I think so.

15          THE COURT:  What kind of medications are

16    you currently taking?

17          THE DEFENDANT:  Psyche medicines.

18          THE COURT:  And how long you been taking

19    those medications roughly?  Several months, several

20    years?

21          THE DEFENDANT:  Two, three years.

22          THE COURT:  Two or three years?

23          THE DEFENDANT:  Two years at least.

24          THE COURT:  You take them every day?

25          THE DEFENDANT:  Twice a day.

 1                    THE COURT:  And how many medications are

 2   we talking about?

 3                    THE DEFENDANT:  Four.

 4                    THE COURT:  Okay.  So you take four psyche

 5   medications every day?

 6                    THE DEFENDANT:  Yeah.

 7                    THE COURT:  And you've been doing that for

 8   roughly three years?

 9                    THE DEFENDANT:  Yeah, and before that too.

10                    THE COURT:  Okay.

11                    THE DEFENDANT:  There was a period there

12   where I medicated myself, so to speak, with other drugs,

13   but I came back to them.

14                    THE COURT:  All right.  But the

15   medications you're currently taking, those are prescribed

16   by a doctor?

17                    THE DEFENDANT:  Yes, sir.

18                    THE COURT:  And you said you've been

19   taking those for roughly three years?

20                    THE DEFENDANT:  Pretty close.

21                    THE COURT:  Okay.  Any other medications

22   that you take for any other conditions?

23                    THE DEFENDANT:  No.

24                    THE COURT:  Just the psyche meds?

25                    THE DEFENDANT:  Yeah.

1          THE COURT:  Okay.  Other than the

2   medicines that you take, have you ever been treated for

3   any kind of mental health or emotional type problems?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  When was the most recent time?

6          THE DEFENDANT:  San Diego, California,

7   about six months ago maybe --

8          THE COURT:  Okay.

9          THE DEFENDANT:  -- four months ago.

10          THE COURT:  Ms. Sullivan, do you want to

11   say something?

12          MS. SULLIVAN:  Your Honor, if you

13   remember, the last time we tried to change his plea to a

14   plea of guilty he was referred on the Court's order and

15   my motion for competency evaluation.  And he was

16   transferred to a facility in San Diego.

17          THE COURT:  Well, Mr. Autry, when you were

18   transferred for the evaluation, did you actually receive

19   treatment or did you just undergo an evaluation, or both?

20          THE DEFENDANT:  I suppose both.

21          THE COURT:  Okay.  And had you received

22   any kind of treatment before that, before you went to San

23   Diego, back years ago, or recently?

24          THE DEFENDANT:  Yeah.

25          THE COURT:  And how many times would you

1   guess that you have been treated for any kind of

2   psychiatric type issues?

3              THE DEFENDANT:  Approximately four to five

4   times, four to six times.

5              THE COURT:  Were those inpatient or

6   outpatient, or both?

7              THE DEFENDANT:  Both.

8              THE COURT:  So roughly four times over the

9   course of your life that you've been treated for

10   emotional type or psychological type issues, some

11   inpatient, some outpatient, some both.

12              Is that correct?

13              THE DEFENDANT:  That's correct.

14              THE COURT:  Okay.  Have you ever been

15   treated for any kind of addictions?  Drug addiction or

16   gambling or anything like that?

17              THE DEFENDANT:  I've been -- no, not

18   really.

19              THE COURT:  Okay.

20              THE DEFENDANT:  I didn't stay, I left.

21              THE COURT:  Well, Mr. Autry, the reason

22   I'm asking you these questions is it's important for me

23   to be sure that you understand what you're doing in court

24   today and the consequences of what you're doing.

25              Do you believe that you do understand?

1              THE DEFENDANT:  Fairly well.

2              THE COURT:  What do you mean by fairly

3    well?  What is it you are concerned that you don't

4    understand?

5              THE DEFENDANT:  Just the form of speech.

6    I understand you pretty clear.

7              THE COURT:  All right.  Well, if there is

8    anything that -- as we're going through all of this, if

9    there is anything that you don't believe that you

10   understand, will you let me know?

11             THE DEFENDANT:  Yeah.

12             THE COURT:  If there is anything, like I

13   told you earlier, that you want to discuss with your

14   attorney, we can take a break and give you a chance to

15   talk to her.  So if there is anything as we go through

16   this process that you don't understand or is confusing to

17   you, you let me know.

18             Will you do that?

19             THE DEFENDANT:  Yeah.

20             THE COURT:  All right.  Have you had an

21   opportunity to discuss your case fully and completely

22   with Ms. Sullivan?

23             THE DEFENDANT:  Yeah.

24             THE COURT:  Has she been able to explain

25   to your satisfaction what the facts of the case are, what

1   the law would be that applies to your case, and what your

2   options are about whether to enter a guilty plea or

3   proceed to trial?

4                    THE DEFENDANT:  Yeah.

5                    THE COURT:  Are you satisfied with Ms.

6   Sullivan's representation of you in this case?

7                    THE DEFENDANT:  Yeah.

8                    THE COURT:  All right.  Then, Mr. Morrow

9   is this your case?

10                   MS. BOSWELL:  I'll be handling it today,

11  Your Honor.

12                   THE COURT:  All right.  Ms. Boswell, if

13  you would, review the relevant counts and the maximum

14  penalty range.

15                   MS. BOSWELL:  I will, Your Honor.

16                   Mr. Autry is charged in a three count

17  indictment.

18                   As to Count 1, it was on or about

19  December 3rd of 2020, in the Western District of

20  Tennessee, he had -- knowing he had previously been

21  convicted of a crime punishable by imprisonment for a

22  term exceeding one year, he knowingly possessed a

23  firearm, which was a Marlin Model 336 RC 30-30 caliber

24  rifle, that had been shipped and transported in

25  interstate commerce, in violation of 18, United States

1  Code, Section 922(g)(1).

2  Before he committed that offense charged

3  in that count, he had at least three previous convictions

4  for violent felonies that were all committed on occasions

5  different from each other, in violation of 18, United

6  States Code, Section 924(e).

7  Count 2 and Count 3 are also 922(g)

8  counts.

9  Count 2, from December 3rd of 2020, Count

10  3, from December 2nd of 2020.

11  THE COURT:  Ms. Boswell, slow down just a

12  little --

13  MS. BOSWELL:  I'm sorry, Your Honor.

14  THE COURT:  -- so we can get everything

15  down accurately.

16  MS. BOSWELL:  As to Count 2, that date was

17  also December 3rd of 2020.  Him being previously

18  convicted and knowing that he was, and he had been

19  convicted of a crime punishable by imprisonment for a

20  term exceeding one year.  This was for possessing

21  ammunition, which was several rounds of Winchester 30-30

22  that had the head stamp Winchester 30-30 Win.

23  Those also had been shipped and

24  transported in interstate commerce.

25  And also, before committed the offense

UNREDACTED TRANSCRIPT

1   charged in Count 2, he again had at least three previous

2   convictions for the violent felonies that were committed

3   on occasions different from one another.

4            And as to Count 3, that one is

5   December 2nd of 2020.  Knowing he had previously been

6   convicted of a crime punishable by imprisonment for a

7   term exceeding one year, he knowingly possessed a

8   firearm.  This one was a Smith & Wesson Model M&P Shield

9   9mm caliber pistol, that also had been shipped and

10  transported in interstate commerce .

11           And before that count, as well he had at

12  least three previous convictions for violent felonies

13  that were committed on occasions different from each

14  other.

15           As to all three of these counts, Your

16  Honor, the penalties would be not more than 10 years in

17  prison, not more than $250,000 fine, or both, not more

18  than three years of supervised release, along with a

19  mandatory special assessment.

20           But if the defendant has three prior

21  convictions for violent felonies or serious drug

22  offenses, this would be not less than 15 years

23  imprisonment, not more than life imprisonment, not more

24  than $250,000 fine, or both, not more than five years of

25  supervised release, again with any special assessment.

1          THE COURT:  Mr. Autry, you just heard the

2  Assistant United States Attorney review the charges

3  contained in Count 1, Count 2 and Count 3 of the third

4  superseding indictment.

5          Is that what you understood you were being

6  charged with?

7          THE DEFENDANT:  Yeah.

8          THE COURT:  And you understand that had

9  you decided you wanted to go to trial, rather than

10  entering a guilty plea, then what we call the burden or

11  the responsibility would have been on the government to

12  come into court and prove your guilt beyond a reasonable

13  doubt.

14          Do you understand that, sir?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  Had you decide you wanted to

17  go to trial, and I know that's not what you decided, but

18  had you decided you wanted to go to trial, then we would

19  have picked a date, come to court, selected a jury to

20  hear and decide your case.

21          The government would be required to put on

22  whatever evidence they had against you.  It's what's

23  called their case-in-chief.

24          Ms. Sullivan would have the right to

25  cross-examine any witnesses that the government called.

1   You would have the right to be represented by an attorney

2   through all phases of this process.

3                   Ms. Sullivan could issue what we call

4   subpoenas that would require witnesses to come into court

5   and testify in your behalf, if she thought that would be

6   beneficial for you.

7                   I would tell the jury at the very

8   beginning of the trial that you start out with what we

9   call a presumption of innocence.  And that means that at

10  the beginning of the trial, we presume you are not

11  guilty.  And the only way a jury can find you guilty, is

12  if the government can come forward with enough evidence

13  to prove your guilt beyond a reasonable doubt.

14                  Do you understand, sir?

15                  THE DEFENDANT:  Yes.

16                  THE COURT:  Also I would have instructed

17  the jury that you would have an absolute right not to

18  testify at trial if you did not want to testify.  If you

19  wanted to testify at trial, you could.  If you didn't,

20  you don't have to give a reason, you just say I don't

21  want to testify.  And I would instruct the jury that the

22  fact you decided not to testify at trial could not be

23  held against you, it couldn't be discussed, it couldn't

24  be considered in any way in deciding whether you were

25  guilty or not guilty of the charges contained in the

1   third superseding indictment.

2                    Do you understand?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Do you have any questions

5   about what you're charged with?

6                    THE DEFENDANT:  No.

7                    THE COURT:  You also heard Ms. Boswell

8   review what we call the maximum penalty range.

9                    Did you understand that as she went over

10  it?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Well, Mr. Autry, again, what's

13  going to happen, if you plead guilty today, and I accept

14  your guilty plea, then in the next few weeks you're going

15  to meet with a probation officer.  The probation officer

16  is going to obtain a lot of information from you about

17  your background, your work, your health, your criminal

18  history, your family, just a lot of information.

19                   The probation officer takes the

20  information you provided, as well as other information,

21  and prepares what's called a presentence report.  Both

22  attorneys, all the attorneys get a copy of the report,

23  and I get a copy.

24                   Ms. Sullivan will go over the report with

25  you to see if there is anything in that report that you

1    either disagree with or you think is incorrect.

2              Ms. Sullivan can also file objections, if

3    there are legal issues that I need to consider.

4              We'll come back to court in roughly 90

5    days for sentencing.  When we come back, the government

6    can argue for whatever sentence it believes is

7    appropriate for you.  Ms. Sullivan will argue on your

8    behalf.

9              You will be allowed to make any

10   statements.  If there is anything you want to tell me,

11   you can do so when we come back.

12             Ms. Sullivan can also bring in witnesses,

13   if she thinks I need to hear from witnesses as far as

14   your sentence is concerned.

15             Are you familiar with the term sentencing

16   guidelines?  Do you know what I mean by that?

17             THE DEFENDANT:  Yeah.

18             THE COURT:  Well, I would image Ms.

19   Sullivan has told you that under the sentencing

20   guidelines there is the low end of the range and then

21   there is an upper end.  I'm required to consider that.

22             Also I'm required to consider what we call

23   the 3553 factors.  Which that's a list of items that the

24   law says I'm required to consider in deciding what I

25   believe would be a fair and appropriate sentence in your

1   case.

2                    Do you understand?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  Do you have any questions

5   about how the Court will be deciding your sentence?

6                    THE DEFENDANT:  No, I don't.

7                    THE COURT:  Do you understand it?

8                    THE DEFENDANT:  I believe pretty well.

9                    THE COURT:  All right.  Let's see, the

10  plea agreement, do you have it, Mr. Bryson?

11                   THE CLERK:  Yes, sir.

12                   THE COURT:  Mr. Autry, this is the plea

13  agreement that's been passed up to the Court.

14                   If you will, look at -- well, it appears

15  that your signature, on the copy I have, is on page five.

16  Is that what you're showing?

17                   Is that your signature on page five of the

18  plea agreement?

19                   THE DEFENDANT:  Yeah.

20                   THE COURT:  When did you sign that?

21                   THE DEFENDANT:  Right there, back there in

22  the cage.

23                   THE COURT:  This morning?

24                   THE DEFENDANT:  Yeah.

25                   THE COURT:  Did you have an opportunity to

1    meet with Ms. Sullivan, and go over the plea agreement

2    before you signed it?

3              THE DEFENDANT:  Yeah, I believe we went

4    over it a couple of times before.

5              THE COURT:  All right.  Scoot up close to

6    that microphone.

7              Repeat what you just said.

8              THE DEFENDANT:  I believe we've had time

9    to go over it a few times.

10             THE COURT:  Okay.  And are you satisfied

11   that you understand everything in the plea agreement

12   before you signed it?

13             THE DEFENDANT:  Yeah.

14             THE COURT:  Okay.  Now turn over -- there

15   should be maybe a separate document that's title

16   Attachment A.

17             Do you have that also?

18             THE DEFENDANT:  Yeah, I believe so.

19             THE COURT:  All right.  Look at, looks

20   like it's on page four of the Attachment A.

21             Is that also your signature on Attachment

22   A?

23             THE DEFENDANT:  Yeah.

24             THE COURT:  Did you also sign that this

25   morning?

1              THE DEFENDANT:  Yeah.

2              THE COURT:  Did you have an opportunity to

3    review Attachment A fully and completely with

4    Ms. Sullivan before you signed it?

5              THE DEFENDANT:  Yeah.

6              THE COURT:  And are you satisfied, and do

7    you believe that you understood everything that's in this

8    Attachment A, and that you did so before you signed it?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  All right.  Pass that

11   back up to Mr. Bryson.

12             And, Ms. Boswell, if you will, review the

13   plea agreement.

14             MS. BOSWELL:  I will, Your Honor.

15             This is the agreement between Jason Wayne

16   Autry and his attorney Ms. Sullivan and the government.

17             As to paragraph 1, states this is the

18   entire agreement.  If there are any issues that need to

19   be resolved, the Court will do that in accordance with

20   all applicable laws.

21             Paragraph 2, that Mr. Autry is pleading

22   guilty to all three counts, because he is guilty.  He

23   agrees to pay his special assessment.

24             Paragraph 3.  He does agree and stipulate

25   that before he committed the offenses in Counts 1through

1   3, that he did have three previous convictions for

2   violent felonies that were committed on occasions

3   different from one another.

4   As to paragraph 4, he is abandoning any

5   claim or any proceeding as to forfeiture.  He agrees to

6   forfeit any interest in either property that's been

7   seized from him out of this case.

8   As to paragraph 5, this has to do with

9   acceptance of responsibility.  And the government will

10   recommend that he receive full acceptance of

11   responsibility under 3E1.1, as long as he continued to

12   demonstrate that, acknowledges his guilt here today, and

13   admits to the facts in Attachment A.

14   As to paragraph 6, this deals with a

15   breach of the plea agreement by the defendant.

16   If he attempts to commit any additional

17   crimes, or engages in any conduct that constitutes

18   obstruction, doesn't truthfully admit his conduct, or if

19   he were to attempt to withdraw his plea, we would be

20   released from any obligations.  Any breach by him does

21   not release him from his plea.

22   Paragraph 7 and 8 cover waiver of appeal

23   in 2255 actions.

24   As to paragraph 7, he is waiving his

25   appellate rights under 18, 3742 knowing and voluntarily.

1      And this states he discussed this is with his attorney.

2                     As to paragraph 8, that's the 2255, which

3      would be another way for him to challenge the conviction.

4      And he's waiving that, unless it's prosecutorial

5      misconduct or ineffective assistance of counsel.

6                     And paragraph 9 covers that he is

7      satisfied with Ms. Sullivan's representation.  He's been

8      provided adequate legal representation.

9                     He's entering this agreement freely,

10     knowingly and voluntarily, and with Ms. Sullivan's

11     counsel.

12                    THE COURT:  All right.  Go ahead and

13     review the Attachment A also, if you will.

14                    MS. BOSWELL:  I will, Your Honor.

15                    As to Attachment A.  It does set out the

16     elements of the 922(g), which were just previously read

17     as part of the third superseding indictment.

18                    It also lists out the elements concerning

19     his three previous convictions for violent felonies that

20     were committed on occasions different from each other.

21                    As to the facts of the offense.  On

22     December 3rd, 2020, a deputy with the Benton County

23     Sheriff's Department did encounter Mr. Autry, who was

24     known by this deputy to be a convicted felon and would be

25     prohibited from possessing firearms under state and

1    Federal law.

2                         This did occur in Benton County.  The

3    deputy saw a male subject who was laying in a field early

4    in the morning in Holiday, Tennessee, and was --

5                         THE COURT:  Slow down just a little, Ms.

6    Boswell.

7                         MS. BOSWELL:  I'm sorry, Your Honor.

8                         THE COURT:  That's okay.  Go ahead.

9                         MS. BOSWELL:  Usually Kristi gives me the

10   look.

11                        So they saw him laying in the field in

12   pajamas in the early morning hours.  In concern for

13   health and safety of that person, they stopped to find

14   out if the person was all right.  That's when the deputy

15   was able to identify the subject as Jason Autry.  Patted

16   him down for weapons, checked for active warrants,

17   neither of which existed.

18                        He let Mr. Autry begin to leave the scene

19   on foot.  After he left the scene, the deputy did view

20   the immediate area where Autry had been lying on the

21   ground.  That's when he found the Marlin Model 336 RC

22   30-30 caliber rifle.  He seized the firearm.  Got in his

23   car.  Continued to try to catch up to Mr. Autry, who was

24   running down the driveway at that point.

25                        When he saw him coming, he began to flee

1    on foot.  But when the deputy got out and ordered Autry

2    to stop, he did comply.

3              Autry made the statement that he was

4    attempting to shoot a deer with the gun, and that he had

5    laid down in the field when he saw the deputy's patrol

6    car.

7              He was arrested.  And after being

8    mirandized, he admitted that the Marlin 30-30 belonged to

9    him.  He provided information that he purchased the gun

10   from Danny Joe Ivy.  Officers also got a -- obtained and

11   executed a search warrant on that same date there at 1066

12   Morris Road, which was where Autry had been residing.

13             They did it on the home and on Autry's

14   truck.  The home was where his girlfriend at the time,

15   Skyler Pinkley, was living, as well as Mr. Autry.

16             During the search of Autry's truck, they

17   found a box of Winchester 30-30 ammunition that was

18   wrapped in blue tape and a gun case that had several

19   other rounds of 30-30 cartridges inside it.

20             During Autry's post-arrest interview, he

21   admitted that he bought the box of ammunition as well

22   from Danny Joe Ivy at the same time he got the rifle.  He

23   admitted that the box of ammunition was wrapped in blue

24   tape.

25             Subsequent investigation, which included

1  witness interviews and review of video footage

2  recorded -- there at the house on Morris Road, there was

3  a surveillance camera set up.  You're able to see on the

4  afternoon/evening hours of the previous night,

5  December 2nd, 2020, that Autry was in possession of the,

6  what came to be the Smith & Wesson Model M&P Shield 9mm

7  pistol.

8           The surveillance footage from the home

9  there showed Autry holding that pistol when he met Danny

10  Joe Ivy and also Brandon Rogers at Pinkley's.

11           The footage also showed that Rogers

12  retrieved a camouflage gun case from the vehicle, and all

13  three men went into Pinkley's home.

14           Autry is seen clearly on the video exiting

15  the home several times, holding the rifle up.

16           Investigators also interviewed Danny Joe

17  Ivy.  He admitted that Autry traded him the Smith &

18  Wesson 9mm pistol for the Marlin 30-30 rifle, as well as

19  the box of ammunition that was wrapped in blue tape.  And

20  at that time Danny Joe Ivy revealed he had also sold that

21  9mm pistol to another individual.

22           ATF investigators went immediately to

23  interview that individual, and were able to retrieve the

24  9mm pistol.

25           Investigators interviewed Brandon Rogers,

UNREDACTED TRANSCRIPT

1    and he corroborated what was shown from surveillance

2    video, as well as what Mr. Autry had previously said, Ms.

3    Pinkley had said, as well as Mr. Ivy.

4              They also interviewed Linda Kimbell, who

5    was Autry's former girlfriend upon release from prison.

6    She stated she had purchased the Smith & Wesson 9mm from

7    a gun show in Paris, Tennessee, before Mr. Autry got

8    released from state prison in September of 2020.

9              Kimbell further stated that Autry took the

10   gun from her without her permission.

11             As noted above, Autry is a convicted

12   felon.  He had numerous convictions, which are listed out

13   within Attachment A.

14             Based on these prior convictions,

15   including a prior Federal felon in possession of a

16   firearm conviction, the sentences imposed in all of these

17   cases, Autry knew he was a convicted felon.  He knew he

18   had been convicted of crimes that were punishable by

19   imprisonment for a term exceeding one year on and before

20   December 2nd and 3rd of 2020.

21             In addition, Autry admitted in his

22   post-arrest interview on December 3rd that he knew he was

23   not supposed to possess a firearm.  He was also on

24   supervised release for his prior Western District of

25   Tennessee felon in possession of a firearm conviction.

1          At the time that he had the firearms and

2     ammunition in this case, he just been released from

3     Tennessee State Prison on September 16th, 2020, which was

4     78 days prior to the instant offense.

5          Before Autry committed the offenses

6     charged in the third superseding indictment, he had at

7     least three previous convictions for violent felonies, as

8     that's defined in United States Code, and those were

9     committed on occasions different from one another.

10          And specifically as to those, he had four

11     counts for aggravated burglary that were previous

12     convictions.  Three counts in Benton County in February

13     9th of 2004; one count from Decatur, on February 23rd of

14     '04; a burglary conviction out of Decatur County on

15     8/15/07.  All of those being in Tennessee.

16          As well as a facilitation to commit

17     especially aggravated kidnapping and a solicitation of

18     first-degree murder in Hardin County from September 14th,

19     2020.

20          A special agent with ATF, who is an

21     interstate nexus expert, reviewed the Smith & Wesson 9mm,

22     as well as the Marlin 30-30, and the Winchester 30-30

23     ammo that was possessed by Autry, and determined that all

24     of those were manufactured outside the state of

25     Tennessee, and did travel in and affected interstate or

1    foreign commerce.

2                   And all of these events happened here in

3    the Western District of Tennessee, Your Honor.

4                   THE COURT:  Mr. Autry, you just heard Ms.

5    Boswell review all of what we call the terms and

6    conditions contained in the plea agreement.

7                   Are those the same terms and conditions

8    that you understood were the agreement before you signed

9    it?

10                   THE DEFENDANT:  No, sir.

11                   THE COURT:  They're not?

12                   THE DEFENDANT:  Well, the terms in this

13   plea agreement, but it's not what happened.

14                   THE COURT:  Well, let's take the plea

15   agreement first.

16                   You've got the plea agreement and you've

17   got the attachment.  Okay?

18                   THE DEFENDANT:  All right.

19                   THE COURT:  So look at the plea agreement.

20                   Have you got a copy there in front of you?

21                   THE DEFENDANT:  Yeah, but I can't see it.

22                   THE COURT:  All right.  Well, I'm going to

23   go back through some of these with you, to be sure you

24   understand.  Okay?

25                   THE DEFENDANT:  All right.

1          THE COURT:  All right.  So paragraph 2

2   states that you're pleading guilty to Count 1, Count 2

3   and Count 3 of the third superseding indictment, because

4   you are guilty of those charges.

5               And that you understand what when we come

6   back for sentencing there will be what's called a $300

7   special assessment that will be due and payable.

8               Is that the way you understood it?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Paragraph 3, states that

11  before you committed the offenses contained in Counts 1,

12  2 and 3 of the third superseding indictment, that you had

13  at least three previous felony convictions that were

14  committed on occasions different from one another.

15              Is that correct?

16         THE DEFENDANT:  I recon.

17         THE COURT:  Well, is it or not?

18         THE DEFENDANT:  Yeah.

19         THE COURT:  All right.  Next paragraph 4,

20  you understand that as part of the prosecution and

21  investigation in this matter, any property that was

22  seized by the government, which would be the firearms and

23  ammunition, I'm assuming -- is there anything else, Ms.

24  Boswell?

25              MS. BOSWELL:  I'm not sure as to the

UNREDACTED TRANSCRIPT

1    vehicle, Your Honor.  We'll be prepared to address that

2    during the sentencing at judgment.  But the firearms and

3    the ammunition are the big items.

4              THE COURT:  All right.  So, Mr. Autry, the

5    paragraph 4 states that the government has taken

6    possession of the firearms and ammunition.  And that that

7    will not be returned to you.  That you're forfeiting any

8    right or interest that you might have to that property.

9              Is that the way you understood it?

10             THE DEFENDANT:  Yeah.

11             THE COURT:  Next, paragraph 5 just states

12   that the government is going to recommend to the Court

13   that you receive what we call credit for acceptance of

14   responsibility.  Credit is good from your standpoint.

15   You want as much credit as you can receive, because that

16   helps to lower the offense level.  The lower the offense

17   level, the lower the recommended sentence.

18             Do you understand?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  But how much credit, if any,

21   that you are entitled to will be something that the Court

22   will have to decide when we come back for sentencing.

23             Do you understand?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  All right.  Paragraph 6 just

1  states there are some things that you could do that would
2  allow the government to what we call withdraw from this
3  agreement.
4          Right now you're bound by the terms of
5  this agreement and the government is bound by the terms
6  of the agreement.  But if you commit any of the
7  violations that are set forth in paragraph 6, then the
8  government could decide to what we call withdraw from the
9  agreement, meaning they are no longer bound by it.
10          But as long as you don't commit any of
11 those violations, then, again, you're bound and the
12 government is bound.
13          Do you understand?
14          THE DEFENDANT:  Yes.
15          THE COURT:  Paragraph 7 is where you what
16 we call waive or give up your right to file an appeal of
17 any sentence that this Court imposes.
18          Now there are some very, very narrow
19 exceptions to that.  But quite frankly, they most likely
20 would not even apply in your case.
21          So the way you need to look at this is
22 whatever sentence this Court imposes upon you is going to
23 be the sentence you will have to serve.  Because in this
24 paragraph 7, you're waiving or giving up your right to
25 file an appeal of any sentence that this Court imposes,

1   again except in these very narrow situations that most

2   likely would not affect your case.

3                   Do you understand?

4                   THE DEFENDANT:  Yes.

5                   THE COURT:  You know you're under oath.

6   Correct?

7                   THE DEFENDANT:  Yes.

8                   THE COURT:  Did you intend to give up your

9   right to file an appeal?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  Okay.  Paragraph 8 is somewhat

12  similar.  It's where you waive or give up your right to

13  file what's called a collateral attack.

14                  Same kind of situation.  There are some

15  exceptions.  But in paragraph 8, you're giving up your

16  right to file any kind of collateral attack against your

17  sentence, except in those very narrow situations.

18                  Do you understand?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  Again, was that what you

21  intended to do?  Did you intend to give up your right to

22  file any kind of collateral attack against your sentence?

23                  THE DEFENDANT:  Yes.

24                  THE COURT:  Paragraph 9 just states that

25  this is the whole agreement that was reached between you

34

1    and the government.

2                    Mr. Autry, did you sign the plea agreement

3    freely and voluntarily?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  Did anyone threaten you in any

6    way, promise you anything, or do anything at all to try

7    to get you to sign the plea agreement against your will?

8                    THE DEFENDANT:  No.

9                    THE COURT:  You signed it because you

10   chose to.

11                   Is that correct?

12                   THE DEFENDANT:  That's correct.

13                   THE COURT:  All right.  Now let's turn

14   over to the Attachment A.

15                   And you heard Ms. Boswell.  She went

16   through all of that.  And I heard you say that there is

17   some parts of this that you disagree with.

18                   Is that correct?

19                   THE DEFENDANT:  Yeah.  It's the -- facts.

20   Most of it was facts, but there were a few things there

21   that wasn't.

22                   THE COURT:  Let me tell you how I'm going

23   to do it, because this is the important part of these

24   proceedings.

25                   Is it a true and correct statement that on

1   or about December 3rd of 2020, in the Western District of

2   Tennessee, that you -- before that date you had been

3   convicted of at least one felony.  In fact, the report

4   says there were multiple felonies.  But you had been

5   convicted of at least one felony.  And that on that date,

6   on or about that date, you were in possession of a Marlin

7   Model 336 RC 30-30 caliber rifle.

8            Is that a true and correct statement?

9            THE DEFENDANT:  That's correct.

10           THE COURT:  And you understand that that

11   rifle -- you may not have known it at the time, but the

12   government would have brought in a witness who would have

13   testified that that 30-30 Marlin rifle was not

14   manufactured in the state of Tennessee.

15           Do you understand?

16           So is that a true and correct statement,

17   that you were in possession of that rifle on or about

18   December 3rd of 2020?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  And you -- before that date

21   you had been convicted of a felony, and you knew you had

22   been convicted of a felony.

23           Is that correct?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Okay.  Then as to Count 2, on

1    or about that same date, the government says that you

2    were also in possession of several rounds of Winchester

3    30-30 ammunition that had a head stamp of Winchester

4    30-30 Win.

5              Is that a true and correct statement?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Were you also in possession of

8    several rounds of 30-30 ammunition?

9              THE DEFENDANT:  Yes, that's correct.

10             THE COURT:  And did it have, as far as you

11   know, did it have this head stamp on it that said

12   Winchester 30-30 Win?

13             THE DEFENDANT:  Yeah.

14             THE COURT:  Okay.  And before that date,

15   again, you had been convicted of a felony.  Correct?

16             THE DEFENDANT:  Yeah.

17             THE COURT:  And knew you had been

18   convicted of a felony?

19             THE DEFENDANT:  Yeah.

20             THE COURT:  And you knew that you were not

21   allowed to possession ammunition.

22             Is that correct?

23             THE DEFENDANT:  That's correct.

24             THE COURT:  All right.  Then finally, as

25   to Count 3, now it says December 2nd.  Is there a

1   difference in the dates, Ms. Boswell?  Or is that just --

2                    MS. BOSWELL:  There is, Your Honor.  One

3   was the night that the -- the night before was on the

4   pistol --

5                    THE COURT:  Okay.

6                    MS. BOSWELL:  -- December 2nd date.

7                    THE COURT:  Mr. Autry, Count 3 of the

8   third superseding indictment alleges that on

9   December 2nd, 2020, in the Western District of Tennessee,

10  that again before that date you had been convicted of a

11  felon, at least one felony, and that on or about that

12  date you were in possession of a Smith & Wesson Model M&P

13  Shield, 9mm caliber pistol.

14                   Is that true and correct?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  So you're admitting that on or

17  about that date you were in possession of this 9mm

18  pistol.

19                   Is that correct?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  And you knew you had been

22  convicted of a felony prior to that date.  Correct?

23                   THE DEFENDANT:  Yeah.

24                   THE COURT:  And you knew that it would be

25  illegal for you to possess this pistol.

1           Is that correct?

2           THE DEFENDANT:  That's correct.

3           THE COURT:  And this all happened in the

4   Western District of Tennessee.

5           Is that correct?

6           THE DEFENDANT:  That's correct.

7           THE COURT:  All right.  Anything else you

8   want to ask, Ms. Boswell, as far as the facts of the

9   case?

10          (ATTORNEY/ATTORNEY CONFERENCE.)

11          MS. BOSWELL:  Judge, I know that he said

12  this as part of the other, but we would like you to cover

13  on page 3 of the facts as to the three previous violent

14  felonies one more time.

15          THE COURT:  All right.  Mr. Autry, if you

16  would, turn over to page 3 of Attachment A.

17          And you see at the top it says, and I'm

18  just reading from the top page 3, it says, as noted

19  before, Autry is a convicted felon, and was so on the

20  date of his possession of the previously mentioned

21  firearms and ammunition.  He has the following felony

22  convictions.

23          And then it lists 1, 2, 3, 4, 5, 6, 7, 8,

24  9, 10 -- looks like 11 separate convictions.

25          Do you see where I'm looking at that?

39

1            THE DEFENDANT:  Yes.

2            THE COURT:  And is that true and correct?

3   Had you been previously convicted on or about the dates

4   that are indicated by each conviction of the convictions

5   that are outlined in that page?

6            THE DEFENDANT:  I pled guilty to them in a

7   court of law.  I did plead guilty.

8            THE COURT:  So you're admitting under

9   oath -- again, you know you're under oath today.

10            THE DEFENDANT:  Yeah.

11            THE COURT:  So you're admitting under oath

12   that the convictions that are listed at the top of page 3

13   of Attachment A, that you admit that you either committed

14   those violations of the law, or you pled guilty to those

15   violations.

16            Is that correct?

17            THE DEFENDANT:  That's correct.

18            THE COURT:  All right.

19            MS. BOSWELL:  And at least three of those

20   previous ones were for violent felonies, Your Honor, that

21   were committed on occasions different from each other.

22            THE COURT:  Are you talking about the last

23   three or?

24            MS. BOSWELL:  It would be the ones that I

25   mentioned.

1          The three counts of aggravated burglary in

2     Benton County from February 9, of '04; the aggravated

3     burglary in Decatur County from February 23, of '04; the

4     burglary in Decatur County from August 15th, of '07, as

5     well as the aggravated assault in Decatur from

6     November 14th of 2013.

7          And then the facilitation to commit

8     especially aggravated kidnapping, Hardin County,

9     September 14th, 2020, and the solicitation of the

10    first-degree murder, same date in Hardin County, Your

11    Honor.

12          THE COURT:  All right.  Mr. Autry, just

13    for clarification.  You heard what Ms. Boswell just

14    indicated to the Court.

15          It's the government's position that the

16    three counts of aggravated burglary out of Benton County,

17    on February 9th of 2004; the aggravated burglary out of

18    Decatur County on February 23rd of 2004; the burglary out

19    of Decatur County on August 15th, 2007; the aggravated

20    assault out of Decatur County on November 14th, 2013; the

21    facilitation to commit especially aggravated kidnapping

22    out of Hardin County on September 14th, 2020; and

23    finally, the solicitation of first-degree murder,

24    premeditated, out of Hardin County, on September 14th,

25    2020, that those would all qualify as what we call

1 violent felonies.

2          Do you see what I'm talking about?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  And do you understand that

5 that's, that you have agreed as part of your plea deal,

6 that these are convictions that you sustained.

7          Is that correct?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  Do you understand -- I'm

10 assuming that the government is going to be arguing as

11 part of sentencing that those would qualify as what we

12 call violent felonies under the sentencing guidelines.

13          Do you understand?

14          THE DEFENDANT:  Yeah.

15          THE COURT:  All right.  Do you have

16 anything at this point you need to discuss with your

17 attorney?

18          THE DEFENDANT:  Nothing comes to mind.

19          THE COURT:  All right.  Do you feel like

20 you understood everything we've done today?

21          THE DEFENDANT:  Pretty much.

22          THE COURT:  Okay.  Well, is there anything

23 you haven't understood?  Tell me if there is.  Because we

24 want to talk about it, if there is anything you haven't

25 understood.

1              THE DEFENDANT:  I've understood pretty
2    much, Judge.
3              THE COURT:  Okay.  Now look over -- I
4    asked earlier if you had signed this Attachment A, and
5    you told me you had.
6              Did you sign this Attachment A freely and
7    voluntarily?
8              THE DEFENDANT:  Yeah.
9              THE COURT:  Did anyone threaten you in any
10   way, promise you anything, or do anything at all to try
11   to get you to sign Attachment A against your will?
12             THE DEFENDANT:  No.
13             THE COURT:  You signed it because you
14   wanted to, and you believed it was correct.
15             Is that correct?
16             THE DEFENDANT:  Yeah.
17             THE COURT:  Okay.  Anything else, Ms.
18   Boswell?
19             MS. BOSWELL:  No, Your Honor.
20             THE COURT:  Anything else, Ms. Sullivan?
21             MS. SULLIVAN:  No, Your Honor.
22             THE COURT:  Mr. Autry, considering
23   everything that you and I have just gone over, do you
24   plead guilty or not guilty to Count 1, Count 2 and Count
25   3 of the third superseding indictment?

1              THE DEFENDANT:  Plead guilty.

2              THE COURT:  Are you entering you plea of

3   guilty freely and voluntarily?

4              THE DEFENDANT:  That's correct.

5              THE COURT:  Did anyone threaten you in any

6   way, promise you anything, or do anything at all to try

7   to get you plead guilty against your will?

8              THE DEFENDANT:  No.

9              THE COURT:  You are pleading guilty simply

10   because you are guilty of these offenses.

11              Is that correct?

12              THE DEFENDANT:  That's correct.

13              THE COURT:  Then the Court finds there is

14   a sufficient factual basis to support a conviction of

15   Mr. Autry in this matter.

16              It appears to the Court that Mr. Autry

17   understands his rights, and that he has knowingly and

18   intentionally waived those rights.

19              The Court finds that Mr. Autry is

20   represented by competent counsel in Ms. Sullivan, and

21   that Mr. Autry has told the Court he is, in fact,

22   satisfied with Ms. Sullivan's representation.

23              The Court further finds that Mr. Autry has

24   knowingly, intentionally and voluntarily waived his right

25   to file a direct appeal, as set forth in paragraph 7 of

44

1    the plea agreement, as well as his right to file a

2    collateral attack under Section 2255, as set forth in

3    paragraph 8 of the plea agreement.

4                So, Mr. Autry, I'm going to accept your

5    plea of guilty to Count 1, Count 2 and Count 3 of the

6    third superseding indictment.

7                All right.  Mr. Bryson, when will we come

8    back for sentencing?

9                THE CLERK:  March 3rd at 10:00 a.m.

10               MS. BOSWELL:  That's good for the

11   government, Your Honor.

12               THE COURT:  Ms. Sullivan, does that work

13   for you?

14               MS. SULLIVAN:  Just one second, Your

15   Honor.

16               Your Honor, I believe March 3rd covers a

17   day where Judge Crenshaw has booked about two weeks off

18   for sentencings, but not set any of those dates in a

19   multi co-defendant case.  But it's the first day, so I'm

20   going to say that's good for sentencing.  And if my

21   co-defendant is set on that date, I will move it to later

22   in the two week time period.

23               THE COURT:  Okay.  All right.

24               Then, Mr. Autry, we'll set your sentencing

25   for that date and time.  It's possible -- sometimes we

UNREDACTED TRANSCRIPT

1  have to move things around to try to accommodate

2  everybody's schedule.  But Ms. Sullivan will stay in

3  touch with you, and let you know if there is any change.

4                Do you understand?

5                THE DEFENDANT:  Yeah.

6                THE COURT:  All right.  What about the

7  supervised release violation?  Do we need to take it up

8  this morning, or how is that going to be handled?

9                MS. BOSWELL:  I think that's up to Your

10  Honor how you choose to do it.  If he were to admit that

11  today, I would suggest that we do the sentencings at the

12  same time.  But we also could handle this at the time of

13  sentencing, so...

14                THE COURT:  Do you have a preference, Ms.

15  Sullivan?

16                MS. SULLIVAN:  My preference would be just

17  to have a little bit more time with him.  We have

18  discussed that, obviously.  But if I could -- if we could

19  handle it at sentencing, I just think for purposes of

20  expedience it might be better if I spend some time with

21  him.

22                THE COURT:  All right.  Then we'll delay

23  addressing the supervised release violation until we come

24  back for sentencing.

25                Do you understand what I'm talking about,

1    Mr. Autry?

2                    THE DEFENDANT:  Yeah.

3                    THE COURT:  Okay.  So Ms. Sullivan

4    indicated she would like to have a little more time to

5    discuss that with you, which makes sense to me.  So when

6    we come back for sentencing, we'll also take up the

7    supervised release violation petition.  And I'll deal

8    with it at the same time I sentence you in the other

9    cases.

10                   All right.  Anything else from the

11   government?

12                   MS. BOSWELL:  No, sir, Your Honor.

13                   THE COURT:  Anything else, Ms. Sullivan?

14                   MS. SULLIVAN:  No, Your Honor.

15                   THE COURT:  All right.  Thank you,

16   Mr. Autry.

17                   (End of Proceedings.)

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

1          I, Kristi Heasley, do hereby certify that the

2   foregoing 46 pages are, to the best of my knowledge,

3   skill and ability, a true and accurate unredacted

4   transcript from my stenotype notes in the matter of:

5   UNITED STATES OF AMERICA

6                                          )
    VS                                     )NO.1:20-cr-10063-STA
7                                          )JACKSON, TENNESSEE
                                           )
8   JASON WAYNE AUTRY                      )

9

10          Dated this 14th day of August, 2023.

11

12

13  /s/  Kristi Heasley

14  ----------------------------------
    Kristi Heasley, RPR
15  Official Court Reporter
    United States District Court
16  Western District of Tennessee
    Eastern Division
17

18

19

20

21

22

23

24

25

                        UNREDACTED TRANSCRIPT