UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**UNITED STATES OF AMERICA**

vs                                                               Case No.:  1:20-CR-10063-STA

**JASON WAYNE AUTRY**

---

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

---

COMES now the Defendant, Jason Wayne Autry, by and through counsel, Michael L. Weinman, and submits the following Supplemental Sentencing Memorandum:

**RESPONSE TO GOVERNMENT NOTICE OF INTENT TO SEEK AN UPWARD DEPARTURE AND UPWARD VARIANCE[1]**

**I.     Background**

In this case, Mr. Autry has pled guilty to one count of Felon in Possession of a Firearm (Count Three), which occurred on December 2, 2020, and two counts of Felon in Possession of a Firearm and Ammunition (Counts One and Two), which occurred the following day. In summary, Mr. Autry was in possession of a pistol belonging to his ex-girlfriend, which he exchanged for a rifle the next day. The pistol had been lawfully purchased by Mr. Autry's ex-girlfriend, and at the time of his arrest, Mr. Autry was involved in a new relationship with another woman. (PSR ¶11). A deputy with the Benton County Sheriff's Office initially encountered Mr. Autry alone in a field during the early morning hours, dressed in his pajamas. Concerned for his safety, the deputy made

---

[1] This filing was prepared in consultation with Ann Searles, a retired United States Probation Officer, employed for over 27 years in that capacity, and who is currently self-employed as a federal sentencing consultant.

1

contact with Mr. Autry. The deputy patted him down and allowed him to leave. A rifle was found after Mr. Autry left the area after that initial contact with officers. (PSR ¶11).

II. **Factors that warrant a sentence at the low end of the guideline range pursuant to 18 U.S.C. 3553(a)(1)**

There are various mitigating factors to be considered in determining the appropriate sentence under 18 U.S.C. 3553(a) regarding the history and characteristics of the defendant and the nature and circumstances of the offense. These factors, when considered alone or in combination, justify a sentence of not greater of 180 months, the statutory minimum and low end of the undisputed Guideline range, which is sufficient to meet the various goals of sentencing under the provisions of 18 U.S.C. 3553(a)(2).

**Nature and Circumstances of the Offense**

Dressed in pajamas and alone in the middle of a field during the early morning hours, it is clear Mr. Autry did not present an imminent danger to any person at the time of his arrest. Mr. Autry made no effort to take possession of or use the rifle during his encounter with the arresting officers. (PSR ¶12). Shortly after locating the rifle and interrogating him about it, Mr. Autry admitted the rifle was his and from whom he had obtained it. Mr. Autry explained that he was using the rifle to hunt deer hunting, a lawful sporting activity for some, but not for Mr. Autry, given his criminal history (PSR ¶12.) Mr. Autry planned to use the deer as a source of food. By providing this information, Mr. Autry wishes to explain, but not excuse his conduct.

If not for Mr. Autry's prior criminal record, the Base Offense Level could have been determined to be far less (6 instead of 24) because the rifle was possessed for a sporting purpose (deer hunting), a legitimate activity recognized by the United States Sentencing Commission as a mitigating circumstance warranting a reduced Base Offense Level under USSG 2K2.1(b)(2). Mr. Autry does not dispute and agrees the correct Base Offense Level was applied. He only wishes to

emphasize he possessed the firearm at the time of his arrest for deer hunting and not for any nefarious purpose.

## History and Characteristics of the Defendant
### Personal and Family History

According to the PSR, Mr. Autry was abused as a child by various adult family members. (PSR ¶71) Child abuse takes many forms and the long-term detrimental consequences to the child are many and far reaching even after adulthood is reached and the abuse ends. According to the Mayo Clinic, any intentional harm or mistreatment to a child under 18 years old is considered child abuse:

> Child abuse takes many forms, which often occur at the same time. *Physical child abuse (*emphasis added*)* occurs when a child is purposely physically injured or put at risk of harm by another person. . . *Emotional child abuse* means injuring a child's self-esteem or emotional well-being. It includes verbal and emotional assault — such as continually belittling or berating a child — as well as isolating, ignoring or rejecting a child. . .
>
> Complications. . . child abuse may result in physical, behavioral, emotional or mental health issues - even years later. . . some examples. . . Substance abuse. . . Illegal or violent behavior. . . Suicide attempts or self-injury. . . Emotional issues. . . Mental health disorders. . . Depression, Anxiety disorders. (Mayo Clinic, *Child Abuse*, https://www.mayoclinic.org/diseases-conditions/child-abuse/symptoms-causes/syc-20370864?p=1)

The World Health Organization has similarly recognized that experiencing violence in childhood impacts lifelong health and well-being and can result in:

> . . . negative coping and health risk behaviors. Children exposed to violence and other adversities are substantially more likely to smoke, misuse alcohol and drugs. . . They also have higher rates of anxiety, depression, other mental health problems and suicide. . . (World Health Organization, *Violence Against Children,* https://www.who.int/news-room/fact-sheets/detail/violence-against-children):

Mr. Autry's father repeatedly physically abused him. As an example, Mr. Autry recalled being beaten by his father and struck with a belt simply over a report card. Mr. Autry described how his father "whooped the hell out of me." (PSR ¶71). Mr. Autry's Father was also an abusive

alcoholic (PSR ¶71). The risk of parental alcoholism on depression is significant among individuals of a wide age range. Centers for Disease Control and Prevention, *Time-Varying Effects of Parental Alcoholism on Depression,* https://www.cdc.gov/pcd/issues/2017/pdf/17_0100.pdf , viewed September 9, 2023. Mr. Autry was also sexually molested and abused as a child by an adult Aunt. (PSR ¶71) Currently, Mr. Autry enjoys the support of his Mother, a retired correctional officer, and with whom he plans to reside his release from custody. Mr. Autry is the father of two adult children, both of whom are employed and productive members of society.

## Mental Health

Mr. Autry has a serious history of mental health illness, including a diagnosis of Bipolar II, Depressed, with Anxious Distress diagnosis (PSR ¶89). Mr. Autry was prescribed a medication for Schizoaffective Disorder at the time of a recent evaluation in connection with his competency in this case. The evaluator noted the defendant could also meet the criteria for "Post-Traumatic Stress Disorder, Attention-Deficit Hyperactivity Disorder." (PSR ¶90). In view of the abuse he experienced as a child, Mr. Autry's current mental health status is especially concerning because he told the probation officer that "he plans to commit suicide by overdosing on fentanyl should he receive a sentence of 15 years to life in prison for the instant offense." (PSR ¶ 92). Records from the Bureau of Prisons corroborate Mr. Autry's thoughts of suicide have alarmingly progressed to actual prior suicide attempts by "cutting his wrist, hanging himself, and overdosing on whiskey and methamphetamine." (*Id.*).

## Substance Abuse Disorder

Mr. Autry has also been diagnosed with Substance Abuse Disorders, including Stimulant Use Disorder (Severe), Opioid Use Disorder (Severe), Cannabis Use Disorder (Severe), and Alcohol Use Disorder (Severe) (PSR ¶89). Individuals with a mental illness such as Mr. Autry are

more likely to experience a substance use disorder than those not affected by a mental illness. Substance Abuse and Mental Health Services Administration, *Co-Occurring and Other Health Conditions*, viewed September 21, 2023 https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/co-occurring-disorders.   According to the 2020 National Survey on Drug Use and Health (NSDUH):

> . . . 40.3 million Americans had a substance use disorder (SUD) in the past year. Substance use disorders continue to be an important health issue in our country. Substance Use Disorders (SUDs) are treatable, chronic diseases characterized by a problematic pattern of use of a substance or substances leading to impairments in health, social function, and control over substance use. It is a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues using the substance despite harmful consequences. . . SUDs can range in severity from mild to severe.

There is no question that much of Mr. Autry's criminal history is in large part attributable to his ongoing struggles with substance abuse, which began at the very young age of 15.  Some of Mr. Autry's multiple failures under supervision can be directly tied to his unrelenting disease of substance use disorder and inability to remain drug free. Several of Mr. Autry's prior offenses are what could be characterized as offenses that were committed by an addict and motivated by an impulse to feed his addiction (PSR ¶¶ 34, 36, 40, 41, 45, 46, 50, 52, 54).

While Mr. Autry falls into the category of having what is commonly referred to as a dual diagnosis, involving both mental health and substance abuse issues, he has reached a critical crossroads in his life by acknowledging he has a substance abuse disorder and as expressed in his desire to fully engage in substance abuse treatment. Denial that one has a problem is a common symptom of a substance abuse disorder, and Mr. Autry has overcome this common barrier, which greatly increases his ability to lead a life without drug dependence and the associated criminal involvement.

**Physical Health Conditions**

In addition to his mental and substance abuse conditions, Mr. Autry has a history of serious health conditions, including multiple head traumas, Hepatitis C, high blood pressure, and a vitreous hemorrhage in his left eye (PSR ¶¶76, 77, 79, 81). In addition, Mr. Autry "is currently in heart failure . . . (and) Records from SCDC confirm this condition . . ." (PSR ¶78). According to the Centers for Disease Control and Prevention, "Heart failure happens when the heart cannot pump enough blood and oxygen to support other organs in your body. . . In 2018, heart failure was mentioned on 379,800 death certificates (13.4%). Centers for Disease Control and Prevention, *Heart Failure*, viewed September 7, 2023.

### III. Response to Upward Departure or Upward Variance Based Upon Criminal History

In arguing for an upward departure or variance, the government places great emphasis on Mr. Autry's guilty plea regarding his involvement in the Holly Bobo case. Mr. Autry is solemnly sorry and cannot express his regret deeply enough for his involvement in that case, and he fully accepts responsibility for his involvement in that case. While Mr. Autry cannot change the past, he wishes to assure the Court he will never again be involved in any similar conduct in the future. While not intending to diminish in any manner whatsoever the seriousness of that offense, it is nevertheless respectfully requested what this Court consider that Mr. Autry was sentenced for and has since fully served his custodial sentence in that matter. In so doing, Mr. Autry paid his debt to society for that crime, as determined by the Decatur County, Tennessee Circuit Court.

While the government correctly states that he was originally charged with especially aggravated kidnapping and first-degree murder in that case, he pled guilty to facilitation of especially aggravated kidnapping and solicitation of first-degree murder. Mr. Autry testified as a

witness for the State in that case and detailed his involvement before the Judge and jury. In approving Mr. Autry sentence in that case, the Judge determined that the sentence imposed was appropriate given Mr. Autry's involvement in the crime. Mr. Autry's testimony was clearly instrumental for the State in obtaining a conviction against the individuals who were found to have actually kidnapped, raped and murdered Ms. Bobo. In this case, that offense has been taken into account in the calculation of his Guideline range and Mr. Autry should not be given additional punishment for that offense.

### IV.     United States Sentencing Commission Research

The United States Sentencing Commission has undertaken various empirical studies in an effort to collect, analyze, and publicly disseminate a broad array of information on federal crime and sentencing practices. The Interactive Data Analyzer developed by the U.S. Sentencing Commission utilizes a comprehensive and impressive collection of research and data reports on various sentencing issues and can be accessed and tailored to specific case types, criminal history categories, geographical areas, ages, genders, races, citizenships, and educational backgrounds.

The information from the Interactive Data Analyzer, specifically with respect to firearm crimes and Career Offenders, reveals there are certain trends nationwide with respect to upward departures and upward variances. A summary of these findings from the years 2015 to 2022 is found in the United States Sentencing Commission, *Research*, *Interactive Data Analyzer, Sentences Imposed Relative to Guideline Range*[2]*,* viewed on September 17, 2023.  This persuasive data indicates that nationwide, upward departures variances for firearms crimes are extremely rare. In 2015, the percentages of case where an upward departure or variance was given in a firearms case was 0 and 1%, respectively; 2016 – 0 and 0%; 2017 – 0 and 1%; 2018 – 0 and 0%; 2019 - .7

---

[2] https://ida.ussc.gov/analytics/saw.dll?Dashboard

and 0%; 2020 – 0 and 1.9%; 2021 – 0 and 1%; and 2022 – 0 and 0%. The highest percentage of 0.7% cases in one year that received an upward departure translates to a single case nationwide that year. The highest percentage of 1.9% cases involving an upward variance in one year involved a total of two cases nationwide.

### Recidivism Rates of Older Defendants

The United States Sentencing Commission has undertaken empirical studies and concluded a federal offender's age at time of release into the community is closely associated with differences in recidivism rates. Offenders released prior to age 21 had the highest rearrest rate, 67.6 percent, while offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent.[3]

Mr. Autry will be 63 years of age upon his release from custody after serving a 15-year sentence, which makes recidivism on his part highly unlikely.

**V.      Sentencing Request**

Mr. Autry readily admits to being a Felon in Possession of a Firearm on two consecutive days as the result of his exchange of a pistol, originally lawfully owned by his ex-girlfriend, for a rifle, which he used to go deer hunting. Mr. Autry fully cooperated with authorities and, as a result, both firearms were recovered. Mr. Autry admitted his guilt to the crime immediately upon his arrest and entered a guilty plea relatively early in the prosecution. Mr. Autry asks the Court to consider the fact that he did not use the firearm to perpetuate violence, brandish, threaten, or use violence against another person in connection with this offense. In fact, Mr. had the firearm to hunt deer, which in most instances is considered a lawful sporting activity as recognized by the United

---

[3] United States Sentencing Commission, Research, *Recidivism Among Federal Offenders, A Comprehensive Overview* (March 2016), viewed September 21, 2023 https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview

States Sentencing Commission as a basis for a reduced offense level. Mr. Autry acknowledges this does not apply to him in view of his prior record, but nonetheless is a factor the Court can consider among many other mitigating circumstances.

The Court must weigh many factors in arriving at a fair and equitable sentence.  While Mr. Autry admittedly has a very serious criminal history, it is a fact that, in connection with the most serious prior offense, his full cooperation with authorities resulted in bringing others to justice for their involvement in the offense. Mr. Autry was the victim of child abuse, horrific physical violence by his father when he was just a vulnerable and susceptible child.  As a child he also witnessed his mother being repeatedly physically abused by his father. He was also a victim of sexual abuse by another family member. Perhaps not coincidentally or surprisingly, as a result of these traumatic experiences, Mr. Autry suffers from substance abuse disorder along with several other mental health conditions. These mitigating factors warrant a sentence of 180 months, as  such a sentence will reflect the seriousness of the offense in accordance with 18 U.S.C. 3553(a)(2), and which will undoubtedly promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant for a lengthy and extended period.

                                    Respectfully submitted,

By:        s/ Michael L. Weinman
            Michael L. Weinman (#015074)
            *Attorney for Defendant Jason Autry*
            101 N. Highland Ave.
            P.O. Box 266
            Jackson, TN 38302
            Telephone: 731-423-5565
            Facsimile: 731-423-5372
            Email: mike@weinmanthomas.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing (Supplemental Memorandum) has been served upon:

United States Attorney's Office
William Joshua Morrow
109 South Highland, Suite 300
Jackson, Tennessee 38301
Email: Josh.Morrow@usdoj.gov


United States Attorney's Office
Beth Boswell
167 No. Main Street - Suite 800
Memphis, TN 38103
Email:  Beth.Boswell@usdoj.gov

by electronic means via the Court's electronic filing system this 27th day of October, 2023.


                                                s/ Michael L. Weinman
                                                Michael L. Weinman