IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) ) Plaintiff, ) ) v. ) ) JASON WAYNE AUTRY, ) ) Defendant. ) | Case No. 1:20-cr-10063-STA |

_____

**SENTENCING MEMORANDUM
AND
RESPONSE TO GOVERNMENT'S NOTICE OF INTENT TO SEEK AN UPWARD
DEPARTURE AND UPWARD VARIANCE**
_____

Comes now Defendant Jason Autry, by and through his counsel, Kevin P. Whitmore, hereby asserts in mitigation for this Honorable Court's consideration that after completing a 100-month sentence and after only **78 days** of freedom, sending Mr. Autry back to prison for 15 years for the commission of a non-violent offense is a sentence that is greater than necessary. Mr. Autry accepted full responsibility for his actions and this was initially demonstrated through his plea of guilty. The defense avers the following:

1

**I.     INTRODUCTION**

On September 23, 2013, Mr. Autry was sentenced to 100 months of incarceration for being a felon in possession of a firearm. Docket Entry 36, Case No. 12-10070, Judgment. On September 16, 2020, Mr. Autry was released from federal custody. Docket Entry 78, Paragraph (Para.) 54 of PSR. On December 3, 2020, after being released from federal custody for only **78 days**, Mr. Autry was arrested and detained for being a felon in possession of a hunting rifle while hunting deer, a non-violent and victimless offense. Para. 11 of PSR. In fact, there was no need for a new PSR because the 2012 PSR would have been sufficient in light of Mr. Autry being out of federal custody only **78 days**.

The government's Motion for an Upward Departure and Upward Variance has nothing to do with the nature and circumstances of the offense before this Honorable Court. If so, the government would not be asking for an upward departure and upward variance this case. Essentially, the government is asking this Honorable Court to base an upward departure and upward variance on **78 days** of Mr. Autry's life because as a convicted felon, he illegally used a rifle to go deer hunting.[1]

Additionally, the government's Motion has nothing to do with Mr. Autry's extensive criminal history under these facts because Mr. Autry's armed career criminal status sufficiently takes into consideration his extensive criminal history. If not for Mr. Autry's extensive criminal history, the Base Offense Level would have been 6 instead of 26

---

1 Judge Breen sentenced Mr. Autry to 100 months of incarceration for his previous offense. During the process, Judge Breen considered Mr. Autry's extensive criminal history.

2

because the rifle was possessed for a sporting purpose (deer hunting), a legitimate activity recognized by the United States Sentencing Commission as a mitigating circumstance warranting a reduced Base Offense Level under USSG 2K2.1(b)(2).

On the other hand, instead of facing 0-6 months (level 6) or 92-115 months (level 23) of imprisonment with acceptance of responsibility.  Mr. Autry now faces a minimum sentence of 180 months.   Mr. Autry's armed career criminal status increases the low end of the guidelines range by more than 180 months (0-6 months) or 88 months (180-92 months).   There is no doubt sentencing Mr. Autry to 180 months is greater than necessary for a non-violent offense and after Mr. Autry had served a 100-month prison sentence with only **78 days** of freedom.

The additional information below is based on Mr. Autry's Presentence Investigation Report.

## II. MITIGATING FACTORS

### A. Nature and Circumstances of the Offense:

Mr. Autry, who had been released from federal custody for only **78 days,** was arrested, detained and later pleaded guilty to possessing a rifle to hunt deer in an open field in Holladay, Tennessee. Paras. 8, 11, 12, 13, 14 and 54 of PSR.  It is important to note that Mr. Autry was hunting deer for food and not just game hunting.   Para. 12, 13 and 14 of PSR.

When the deputy observed Mr. Autry in the open field, Mr. Autry ultimately told the deputy that he was deer hunting. Mr. Autry also admitted to purchasing ammunition from a friend. Para. 12 of PSR.   An investigation further revealed that Mr. Autry traded his

3

girlfriend's firearm for the hunting rifle. *Id.*

The committed offense involves no violence and nor was anyone's life placed at risk. This is not to minimize the law forbidding convicted felons from possessing a firearm, but to point out there were no aggravating factors. The Victim Impact section of the PSR specifically noted, "[T]here is no identifiable victim." Para 18 of the PSR.

On the other hand, the government's Motion for an Upward Departure and Upward Variance is seeking to create a citizen victim when there is not one. The Motion also seeks to create aggravating factors when there are none in light of Mr. Autry's **78 days** of freedom. Certainly, the government's request would be appropriate if Mr. Autry possessed a firearm during the commission of a violent offense or serious drug offense, however, this was not the case.

The nature and circumstances of the offense could have been very serious and even tragic to warrant a departure above a 180-month sentence, but it was not.

### B. The History and Characteristics:

The government's assertion is correct that Mr. Autry has a very extensive criminal history. The PSR calculates the adjusted offense level as 26 (total offense level 23 and 92-115 months of imprisonment with acceptance of responsibility). Para. 28 of PSR. However, because Mr. Autry is an armed career criminal, his adjusted offense level is 33 (range 235-293) and Mr. Autry's total offense level is 30 (range 168-210 with acceptance). Para. 29 and 31 of PSR. Mr. Autry's armed career criminal status sufficiently punishes him for his extensive criminal history because his status increases the low end of the guideline range by 88 months. Mr. Autry had **78 days** of freedom before losing it to an

4

even longer period of incarceration than he had recently served.

Section 4B1.4(b)(3)(A) and 4B1.4(c)(2) of the Sentencing Guidelines also provided increased exposure if Mr. Autry had possessed the firearm in connection with a crime of violence or controlled drug offense. In the instant matter, there is no dispute that Mr. Autry was using the rifle for deer hunting. Frankly, the government's motion seeks to make the underlining offense more serious than it is.

Mr. Autry's **78 days** of freedom before the offense underscores the grave impact that Mr. Autry's childhood, substance abuse, and mental health issues have had on his life.

1.  **Childhood and Family Circumstances**

The PSR reveals Mr. Autry's dark past of being a victim of child physical and sex abuse. Para. 71 of PSR. Mr. Autry was severely abused physically by his alcoholic father and sexually abused by an aunt. *Id.* As a child, Mr. Autry also watched his father severely physically abuse his mother. *Id.*

The World Health Organization has similarly recognized that experiencing violence in childhood impacts lifelong health and well-being and can result in: . . . negative coping and health risk behaviors. Children exposed to violence and other adversities are substantially more likely to smoke, misuse alcohol and drugs. . . They also have higher rates of anxiety, depression, other mental health problems and suicide. . . (World Health Organization, Violence Against Children, https://www.who.int/news-room/fact-sheets/detail/violence-against-children). As documented by the World Health Organization, Mr. Autry's childhood physical and sexual abuse contributed to his mental

5

health and substance abuse problems.

### 2. Mental and Emotional Health

Mr. Autry's current PSR documents that "according to his prior presentence report, in approximately 1991, the defendant sought substance abuse treatment at Lakeside Behavioral Health System in Memphis, Tennessee." Para 82 of PSR. Additionally, in 2020, while on supervised release, Mr. Autry attended Carey Counseling Center for mental health treatment. Mr. Autry's mental health issues have been well documented.

Mr. Autry has been diagnosed with Bipolar II, Depression, and Anxious Distress diagnosis. Para 89 of PSR. Mr. Autry was prescribed a medication for Schizoaffective Disorder after a recent evaluation in connection with his competency in this case. The evaluator noted the defendant could also meet the criteria for "Post-Traumatic Stress Disorder, and Attention-Deficit Hyperactivity Disorder." Para 90 of PSR. The PSR states Mr. Autry has attempted suicide on several occasions including "cutting his left wrist, hanging himself, and overdosing on whiskey and methamphetamine." Para 92 of PSR. This information was corroborated by Mr. Autry's BOP evaluation. *Id.* The PSR also notes that Mr. Autry disclosed "he plans to commit suicide by overdosing on fentanyl should he receive a sentence of 15 years to life in prison for the instant offense." *Id.*

### 3. Substance Abuse

Mr. Autry has also been diagnosed with Substance Abuse Disorders, including Stimulant Use Disorder (Severe), Opioid Use Disorder (Severe), Cannabis Use Disorder (Severe), and Alcohol Use Disorder (Severe). Para. 89 of PSR. Individuals with a mental illness such as Mr. Autry are more likely to experience a substance use disorder

than those not affected by a mental illness. (Substance Abuse and Mental Health Services Administration, Co-Occurring and Other Health Conditions, viewed September 21, 2023 https://www.samhsa.gov/medications-substance-use disorders/medications-counseling-related-conditions/co-occurring-disorders.). According to the 2020 National Survey on Drug Use and Health (NSDUH):

> . . . 40.3 million Americans had a substance use disorder (SUD) in the past year. Substance use disorders continue to be an important health issue in our country. Substance Use Disorders (SUDs) are treatable, chronic diseases characterized by a problematic pattern of use of a substance or substances leading to impairments in health, social function, and control over substance use. It is a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues using the substance despite harmful consequences. . . SUDs can range in severity from mild to severe.

There is no question that much of Mr. Autry's criminal history is in large part attributable to his ongoing struggles with substance abuse, which began at the very young age of 15. Some of Mr. Autry's multiple failures under supervision can be directly tied to his unrelenting disease of substance use disorder and inability to remain drug free. Several of Mr. Autry's prior offenses are what could be characterized as offenses that were committed by an addict and motivated by an impulse to feed his addiction. Paras. 34, 36, 40, 41, 45, 46, 50, 52, 54 of PSR.

While Mr. Autry falls into the category of having what is commonly referred to as a dual diagnosis, involving both mental health and substance abuse issues, he has reached a critical crossroad in his life by acknowledging he has a substance abuse disorder and expressed a desire to fully engage in substance abuse treatment. Denial that one has a problem is a common symptom of a substance abuse disorder. Mr. Autry has overcome

7

this common barrier, which will greatly increase his ability to lead a life without drug dependence and the associated criminal involvement.

### 4. Physical Health

In addition to his mental and substance abuse conditions, Mr. Autry has a history of serious health conditions, including multiple head traumas, Hepatitis C, high blood pressure, and a vitreous hemorrhage in his left eye. Paras. 76, 77, 79 and 81 of PSR. In addition, Mr. Autry "is currently in heart failure . . . Records from SCDC confirm this condition." Para 78 of PSR.

### C. Promote respect for the law and provide just punishment:

In light of Mr. Autry's **78 days** of freedom after his most recent incarceration period, a 180-month sentence is greater than necessary. Instead of promoting respect for the law, one could be led to view the law as being unfair and harsh. Even a multi-convicted felon, who is sentenced to 15 years of imprisonment for possessing a hunting rifle while hunting deer for food to eat, might garner the sympathy of many in the public.

For example, as this Honorable Court knows, at one time the public cried out for stiff penalties to address the ills of crack cocaine in some communities. However, once the impact of the stiff penalties began to surface, public sentiments changed and Congress and the Sentencing Commission changed the laws and Sentencing Guidelines to reduce the stiff penalties.

### D. **Deterrence of criminal conduct:**

Under these limited facts, a 15-year sentence is greater than necessary and would be extremely harsh. A lesser sentence will deter others from further crimes.

### E. **Protection from further crimes of the defendant:**

Mr. Autry's most recent crime, possession of a hunting rifle by a convicted felon, is a victimless crime as stated in the PSR. Para 18 of the PSR. Aggravated Burglary is a violent offense, but Mr. Autry's convictions involved entering dwellings when there were no individuals inside the dwellings at the time. An examination of Mr. Autry's extensive criminal history involves no robberies of individuals and businesses.

A 15-year sentence places Mr. Autry over the age of 60 upon his release and his age will certainly limit his ability to participate in further criminal activity.

### F. **The need for educational or vocational training, medical care:**

Mr. Autry seeks to take advantage of all educational and vocational training to assist him in leading a productive life and becoming a righteous contributor to society.

### III. **CONCLUSION**

WHEREFORE, Mr. Autry respectfully submits the foregoing for the Court's consideration, along with the other arguments presented in open Court, when determining the appropriate sentence in this case.

Respectfully submitted,

*/s/ Kevin P. Whitmore*
Kevin P. Whitmore #02129
Attorney Representative of
LAST CHANCE LAW FIRM PLLC
301 Washington Avenue
Suite 202

>Memphis, Tennessee 38103
>(901) 461-1039
>kwhitmoore@comcast.net
>whitmore@lastchancelaw.com

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served electronically to the government's representative/counsel via the Court's ECF system this 7th day of June 2024.

>*/s/Kevin P. Whitmore*